UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:12-CR-016-SDJ |
| | § | |
| DANIEL GEORGE JENSON (13) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Daniel George Jenson's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. #1505). The Government filed a response in opposition, (Dkt. #1510), and Jenson filed a reply, (Dkt. #1516). Having considered the parties' filings, the record, and the applicable law, the Court **DENIES** the motion.

### I. BACKGROUND

Jenson is currently serving a 122-month term of imprisonment at FCI Forrest City Low for conspiracy to possess with the intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. His anticipated release date is March 4, 2024. Citing prison conditions, his age, his vulnerability to COVID-19 complications—presumably based on his medical conditions, which include hypertension, hypertrophy of his prostate, knee pain, and "Familiar Tremors," (Dkt. #1516 at 2)—his low risk of recidivism, and his post-sentencing rehabilitation, and relying on 18 U.S.C. § 3582(c)(1)(A), Jenson requests that the Court reduce his sentence to time served and order him released from prison. (Dkt. #1505 at 1–2).

Before Jenson filed the instant motion, he submitted a request for compassionate release to his warden on March 14, 2021. (Dkt. #1505 at 3–4). In the

1

request, Jenson claimed that the risk created by the COVID-19 pandemic, coupled with his underlying health conditions and a lack of medical care, constituted an extraordinary and compelling reason warranting his release from prison. He also asserted that he had participated in various programs while incarcerated, had not received any incident reports, and would be able to find gainful employment upon release. (Dkt. #1505 at 4). According to the Government, the warden did not respond to this request. (Dkt. #1510 at 1–2 & n.1). Approximately eight months later, Jenson filed a compassionate-release motion in this Court, seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

## II. DISCUSSION

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and

(3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d

3

426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[1] Accordingly, while U.S.S.G. § 1B1.13 dictates the

---

[1] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g., United States v. Aruda*,

4

meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

**B. Extraordinary and Compelling Reasons**

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's

---

993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling

this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into

what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

8

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Jenson has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

**C. Jenson's Motion**

    **i. Exhaustion**

As an initial matter, the Court may consider Jenson's compassionate-release motion only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. A court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such modification is made by the Director of the BOP or by a defendant who has fully exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Jenson requested compassionate release from the warden of his facility on most of the grounds asserted before this Court—that the risk created by the COVID-19 pandemic, coupled with his underlying health conditions, his rehabilitation, and his low risk of recidivism constitute extraordinary and compelling reasons warranting his release from prison—and the warden did not respond to this request. *See* (Dkt. #1505 at 3–4); (Dkt. #1510 at 1–2); *see also* 28 C.F.R. § 571.61(a)

9

(providing that a prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his facility). More than thirty days after Jenson's request to his warden, Jenson filed this motion with the Court. Thus, Jenson has met the exhaustion requirement with respect to all grounds for compassionate release offered in his request to the warden. *See* 18 U.S.C. § 3582(c)(1)(A) (stating that a defendant may file a compassionate-release motion after "the lapse of 30 days from the receipt of [a compassionate-release] request by the warden of the defendant's facility").

But Jenson did not raise his age in his request to the warden. As this Court has previously stated, "to exhaust [his] administrative remedies, a prisoner must first present to the BOP the *same grounds warranting release* that the prisoner urges in [his] motion." *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (emphasis added). Therefore, the Court will not consider Jenson's argument related to age because Jenson has not satisfied the exhaustion requirement with respect to this argument.

### ii. "Extraordinary and compelling reasons" warranting release

Although Jenson has satisfied the threshold exhaustion requirement as to his remaining arguments, his motion must be denied because he has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Jenson argues that his medical conditions, which place him at a higher risk of complications should he become infected with COVID-19, coupled with FCI Forrest City's overall conditions and lack of medical care, constitute an extraordinary and compelling reason warranting his release. Jenson also contends

10

that he has exhibited good behavior while incarcerated and poses a low risk of recidivism. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Jenson's medical conditions and related COVID-19 concerns do not fall within the first category of "extraordinary and compelling reasons" identified within the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>    (I) suffering from a serious physical or medical condition,
>    (II) suffering from a serious functional or cognitive impairment, or
>    (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A). Jenson argues that his underlying medical conditions make him more susceptible to developing severe health complications should he contract COVID-19. However, he fails to show how his hypertension, hypertrophy of his prostate, knee pain, and tremors presently affect his ability to provide self-care within his environment. Indeed, he currently manages all of his medical conditions

except for the tremors with medication. Rather, Jenson fears that these conditions could make him more susceptible to developing a serious medical condition should he contract COVID-19.

Any suggestion that Jenson's underlying medical conditions, coupled with the risk of contracting COVID-19, substantially diminish his ability to provide self-care due to his conditions of confinement does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. By contrast, Jenson's motion relies on the risk of him contracting COVID-19 in the future and the risk that COVID-19 would have serious effects on him.

In addition, Jenson's inability to engage fully in proactive measures to minimize the risk of contracting COVID-19 is not caused by his chronic health conditions. In other words, Jenson has not shown how his medical conditions prevent him from providing self-care. To the contrary, the record indicates that Jenson's health issues have been effectively managed with medication and/or periodic clinician evaluations. And as the Government notes in its response, Jenson is currently classified as "Care Level 1 'healthy or simple chronic care.'" (Dkt. #1510 at 2 (emphasis omitted)). Therefore, Jenson's concern about the risks of contracting COVID-19 in the future do not fall within the "extraordinary and compelling reasons" enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Jenson's failure to show that his circumstances fall within those described by the Sentencing Commission is not fatal to his motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitutes "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Jenson's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Jenson asserts as a basis for his release are unlike any of the reasons enumerated by the Sentencing Commissions in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver because of the defendant's incarceration. By contrast, Jenson argues that he should be released because incarceration increases his risk of contracting COVID-19, and his medical conditions increase his risk of having complications from COVID-19.

Of course, neither Jenson's infection with COVID-19 nor his experiencing serious complications after infection is guaranteed. And in fact, Jenson tested positive for COVID-19 in May 2020, was asymptomatic, and recovered within less than a month. Courts across the nation, including this one, have repeatedly denied COVID-19-based motions for compassionate release filed by prisoners who, like Jenson, have already contracted and recovered from the virus. *See, e.g.*, *United States v. Gipson*, 829 F.App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for defendant with preexisting conditions who had already contracted COVID-19); *United States v. Kennedy*, No. 4:16-CR-86(1), 2021 WL 4225703, at *5 (E.D. Tex. Sept. 16, 2021) ("Although Kennedy expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage an outbreak within his correctional facility or that the facility is specifically unable to treat Kennedy, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated."); *United States v. Smith*, No. 16-183, 2021 WL 2227269, at *4 (E.D. La. June 2, 2021) (explaining that "courts have denied compassionate release to defendants who have successfully recovered from COVID-19"); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quotation omitted)).

The Court does not downplay Jenson's health issues or suggest that his concerns about COVID-19 are unreasonable. But Jenson's motion does not identify any specific, significant hardship that he presently faces; rather, the motion raises

14

only the concern that Jenson is at risk for developing a significant hardship in the future *if* he contracts COVID-19. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i).

Beyond the Sentencing Commission's nonbinding guidance, there is an additional reason why Jenson has failed to present an extraordinary and compelling reason for early release: he has received a vaccine that is highly effective against COVID-19 and its variants. Shaun J. Grannis et al., *Interim Estimates of COVID-19 Vaccine Effectiveness Against COVID-19-Associated Emergency Department or Urgent Care Clinic Encounters and Hospitalizations Among Adults During SARS-CoV-2 B.1.617.2 (Delta) Variant Predominance*, 70 MORBIDITY & MORTALITY WEEKLY REPORT 1291, 1292 (2021). For most prisoners, the availability of a COVID-19 vaccine "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 802 (7th Cir. 2021); *see also United States v. Baeza-Vargas*, 532 F.Supp.3d 840, 845–46 (D. Ariz. 2021) (collecting cases explaining that vaccination mitigates the risk from COVID-19 to such an extent that COVID-19, coupled with underlying medical conditions, does not present an extraordinary and compelling reason to grant compassionate release). Thus, the risk Jenson faces from the virus, whether considered alone or in conjunction with his underlying conditions, does not constitute

an extraordinary and compelling reason within the meaning of Section 3582(c)(1)(A)(i).

Additionally, Jenson argues that his rehabilitation while incarcerated and his low risk of recidivism constitute extraordinary and compelling reasons warranting his release. Although Jenson's behavior while incarcerated is commendable, it does not constitute an extraordinary and compelling reason for a sentence reduction. The Court may consider post-sentencing rehabilitation efforts in ruling on a compassionate-release motion, but "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also United States v. Hudec*, No. 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *United States v. Dotrey*, No. 2:13-CR-04, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying motion for compassionate release where defendant argued that he had been rehabilitated and was rated by the BOP as an individual with a low risk of recidivism). Without more, Jenson's alleged rehabilitation and low recidivism risk do not constitute extraordinary and compelling reasons within the meaning of Section 3582(c)(1)(A)(i).

For the foregoing reasons, neither Jenson's COVID-19-related concerns nor his alleged rehabilitation constitute extraordinary and compelling reasons within the meaning of Section 3582(c)(1)(A)(i). Because Section 3582(c)(1)(a)(i) authorizes

16

sentence reductions only for "extraordinary and compelling reasons" within the meaning of the statute, the Court must deny Jenson's motion.

### iii. Section 3553(a) factors

Even if Jenson could establish that "extraordinary and compelling reasons" warrant his release, his motion for compassionate release would still fail because the sentencing factors under 18 U.S.C. § 3553(a) weigh against reducing his sentence. Jenson has failed to show how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors—notably Jenson's history, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. 18 U.S.C. § 3553(a).

While the Court commends Jenson for completing several vocational and educational programs while incarcerated, he continues to present a danger to the community based on the totality of the circumstances. Jenson pleaded guilty to participating in a drug-trafficking conspiracy involving large amounts of methamphetamine originating in Mexico. (Dkt. #835 ¶¶ 8–13). And this was not Jenson's first offense. To the contrary, he has a substantial criminal history that includes possession of stolen property, assault, possession of a controlled substance, manufacturing of a controlled substance, credit card abuse, tampering with evidence, and possession of a prohibited weapon. (Dkt. #835 ¶¶ 29–40). Jenson fails to show how his release would reflect the seriousness of his offense, promote respect for the law, and provide just punishment. Considering all the relevant factors, the Court concludes that the sentence originally imposed remains sufficient, but not greater

than necessary, to comply with the purposes of Section 3553(a). Jenson's motion is therefore also denied on this basis.[2]

### III. CONCLUSION

For the foregoing reasons, Defendant Daniel George Jenson's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. #1505), is **DENIED**.

**So ORDERED and SIGNED this 13th day of June, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[2] To the extent Jenson requests, in the alternative, that the Court order him released to home confinement, such request must also be denied. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Groover*, 844 F.App'x 185, 188 (11th Cir. 2021) (per curiam) ("Neither § 3624(c)(2) nor the CARES Act . . . give the judiciary any authority to grant an inmate's request for home confinement."); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. 3:19-CV-97, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement." (citing *Moore v. U.S. Att'y. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971) (per curiam))).